IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| SPARKLES WAGES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 14 L 9475 |
| | ) | |
| MOUNT SINAI HOSPITAL MEDICAL | ) | |
| CENTER OF CHICAGO, SINAI HEALTH | ) | |
| SYSTEM, CARLOS SANDOVAL-HERRERA, | ) | |
| MD, THE MOUNT SINAI COMMUNITY | ) | |
| FOUNDATION, d/b/a SINAI MEDICAL | ) | |
| GROUP, and ACCESS COMMUNITY | ) | |
| HEALTH NETWORK, | ) | |
| | ) | |
| Defendants. | ) | |

## ATTORNEY AFFIDAVIT

I, Michael T. Peterson, being first duly sworn on oath, states and deposes as follows:

1. I am the attorney of record in the above-captioned case.

2. I have consulted and reviewed the facts of the case with health professional who I reasonably believe is: (i) knowledgeable in the relevant issues involved in the particular action; (ii) has actively practiced consistently throughout the last 10 years and is still actively practicing in the same area of health care or medicine that is at issue in the particular action; and (iii)is qualified by experience or demonstrated competence in the subject of the case;

   a. The reviewing health professional has determined in his written report, after a review of the medical records and other relevant material involved in the particular action that there is a reasonable and meritorious cause for the filing of such action;

   b. I have concluded on the basis of the reviewing health professional's review and consultation that there is a reasonable and meritorious cause

for filing of such action; and

c. Attached is a copy of the written report, clearly identifying the plaintiff and the reasons for the reviewing health professional's determination that a reasonable and meritorious cause for the filing of the action exists.

FURTHER AFFIANT SAYETH NOT.

_____
Michael T. Peterson

SUBSCRIBED AND SWORN to before
me this 27th day of April, 2015

_____
NOTARY PUBLIC

OFFICIAL SEAL
STEPHANIE K NATHANSON
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:08/09/15

Stephanie K. Nathanson
Michael T. Peterson
LAW OFFICES OF STEPHANIE K. NATHANSON
70 W. Madison Street, Suite 3960
Chicago, IL 60602
312-263-9090
312-277-9099 (facsimile)
Attorney Number 56412

April 27, 2015

Stephanie K. Nathanson
Michael T. Peterson
LAW OFFICES OF STEPHANIE K. NATHANSON
70 W. Madison Street, Suite 3960
Chicago, IL 60602

**Re:    Sparkles Wages**

Dear Ms. Nathanson:

I have reviewed the medical records from Mt. Sinai Medical Center, Access Community Health Network, Dr. Carlos Sandoval-Herrera, Mercy Hospital and Northwestern Memorial Hospital and Northwestern Memorial Physician Group. I am currently an obstetrician/gynecologist, licensed to practice medicine in all of its branches; I have actively practiced for the past ten years and before; and I am board certified in Obstetrics and Gynecology. I am also an Assistant Professor of Obstetrics and Gynecology at a University Hospital. I am knowledgeable about all of the treatment to Sparkles Wages, by Mt. Sinai Medical Center, Access Community Health Network, Dr. Carlos Sandoval-Herrera, Mercy Hospital and Northwestern Memorial Hospital and Northwestern Memorial Physician Group. Based upon my review of these records, I find there is a reasonable and meritorious basis for filing a lawsuit against Mt. Sinai Medical Center and its employees and/or agents, Access Community Health Network and its employees and/or agents and Dr. Carlos Sandoval-Herrera.

### Dr. Carlos Sandoval-Herrera and Access Community Health Network

The facts upon which I base this opinion are as follows: On June 21, 2012, Sparkles Wages underwent a pelvic ultrasound which revealed a single intramural fibroid seen in fundal / posterior area, measuring 5.7 x 5.7 x 5.6 cm with no blood flow per Color Doppler. On September 4, 2012, Sparkles Wages underwent a MRI of pelvis with and without contrast, which revealed a 5.5 X 5.4 x 9.4 cm enhancing myometrial mass arising from posterior wall uterus consistent with fibroid and normal ovaries. On September 10, 2012, Sparkles Wages underwent a laparoscopic myomectomy with chromotubation. A Cooper Surgical KOH Cup, model number KCS-85, 3.5 cm, was utilized during the September 10, 2012, surgical procedure. On September 11, 2012, Carols Sandoval-Herrera, MD assessed Sparkles Wages and discharged her home with instructions to follow up with him in approximately one week. On September 17, 2012, Sparkles Wages was seen at Access Community Health Network with complaints of pain and vaginal bleeding, and was discharged home with instructions to return if her symptoms persisted or worsened. On September 19, 2012,

1

Sparkles Wages was seen by Carols Sandoval-Herrera, MD at Access Community Health Network for follow-up evaluation and treatment with continued complaints of pain and was counseled in healthy lifestyle and nutritional advice, and was discharged with instructions to follow up in four weeks. On October 22, 2012, Sparkles Wages returned to Access Community Health Network with continued complaints of pain and vaginal discharge, where she was given a screening for sexually transmitted diseases, diagnosed with bacterial vaginosis, given a prescription for Flagyl, and discharged with instructions to return in approximately one month. On November 21, 2012, Sparkles Wages returned to Access Community Health Network with continued complaints of pain and vaginal discharge and was discharged home with instructions to undergo an ultrasound. On December 3, 2012, Sparkles Wages was seen at Mt. Sinai Hospital where she underwent a pelvic transabdominal and transvaginal ultrasound, and was diagnosed with an enlarged uterus. On December 15, 2012, Sparkles Wages presented to the Mercy Hospital emergency department with severe pain in her abdomen, legs, foul smelling vaginal discharge, vaginal bleeding, and constipation. During that visit, on pelvic exam, a vaginal cervical cap foreign body used during the September 10, 2012, surgical procedure was visualized. On December 17, 2012, Sparkles Wages returned to Mercy Hospital emergency department where the retained foreign body, Cooper Surgical cervical cap used in the September 10, 2012, surgery, was removed successfully. On December 17, 2012, at Mercy Hospital, Sparkles Wages was diagnosed with cervicitis/vaginitis and was discharged with antibiotics. From December 17, 2012- present, Sparkles Wages has been treated with post-operative complications and infections, as a result of the retained surgical cap. Sparkles Wages began treating at Northwestern Memorial Hospital and its physicians and underwent two surgical procedures in 2014 as a result of the damages she suffered from the retained surgical cap.

It was a breach in the standard of care for Dr. Sandoval-Herrera to immediately perform a laparoscopic myomectomy with chromotubation to treat a fibroid without attempting less invasive measures first. For instance, Dr. Sandoval-Herrera failed to consider or attempt medical management or less invasive procedures, including, but not limited to, nonsteroidal anti-inflammatory drugs (NSAIDs), like Motrin. If that isn't effective, another option is a class of drugs that blocks the ovaries' production of estrogen and other hormones; medications to help dissolve or eliminate the fibroid, Uterine artery embolization (UAE), also known as uterine fibroid embolization (UFE); and Hysteroscopy. Given the size and location of the fibroid, Dr. Sandoval-Herrera also had a duty to consider leaving the fibroid alone without any intervention. It was a breach in the standard of care to perform a laparoscopic myomectomy with chromotubation without exhausting less invasive means in a young woman who was still capable of child bearing and had expressed an interest in having more children.

Dr. Sandoval-Herrera failed to properly inspect that all surgical equipment was removed

2

from Sparkles Wages' body and perform an equipment count and check; failed to timely and properly recognize that part of the surgical tool/equipment was left inside of Sparkles Wages' body; failed to timely recognize that a piece of the Cooper Surgical KOH Cup, model number KCS-85, 3.5 cm was left inside SPARKLES WAGES' body; failed to properly perform surgery; failed to inspect the Cooper Surgical KOH Cup, model number KCS-85, 3.5 cm after it was removed from Sparkles Wages to ensure it was intact; failed to properly and timely diagnose Sparkles Wages' symptoms and complaints were caused by the Cooper Surgical cervical cap or surgical tool part left inside her body; failed to perform appropriate diagnostic tests to determine the cause of Sparkles Wages' symptoms and complaints; failed to timely treat Sparkles Wages' post-surgical complications and symptoms; failed to remove the Cooper Surgical cervical cap or surgical tool part left inside sparkles wages' body; and failed to properly utilize the Cooper Surgical KOH Cup during surgery.

Dr. Shumal Malepati, MD, Dr. Sandoval-Herrera's surgical assistant and fellow employee of Access Community Health Network failed to inspect equipment utilized during operative procedure: MD, and after it was removed from the vagina.

Given the size of the surgical cup, Dr. Sandoval-Herrera should have recognized that it was missing from the Cooper Surgical tool. His failure to recognize that the surgical cap was left inside of Sparkles Wages was a breach in the standard of care. And, in the several post-operative visits which occurred from September of 2012- December of 2012, Dr. Sandoval-Herrera and his colleagues were negligent in failing to recognize that Sparkles Wages' post-operative complaints and symptoms were as a result of a retained surgical cap.

These breaches in the standard of care by Dr. Sandoval-Herrera, Access Community Health Network and its employees and agents, were a proximate cause of Ms. Wages' permanent injuries and damages, including, but not limited to, post-operative infections, symptoms, complications, pain and suffering, loss of a normal life and subsequent surgeries resulting in her inability to have children.

### Mount Sinai Hospital Medical Center of Chicago, Sinai Health System

The facts upon which I base this opinion are as follows: On June 21, 2012, Sparkles Wages underwent a pelvic ultrasound which revealed a single intramural fibroid seen in fundal / posterior area, measuring 5.7 x 5.7 x 5.6 cm with no blood flow per Color Doppler. On September 4, 2012, Sparkles Wages underwent a MRI of pelvis with and without contrast, which revealed a 5.5 X 5.4 x 9.4 cm enhancing myometrial mass arising from posterior wall uterus consistent with fibroid and normal ovaries. On September 10, 2012, Sparkles Wages underwent a laparoscopic myomectomy with chromotubation. A Cooper Surgical KOH Cup, model number KCS-85, 3.5 cm, was utilized during the September 10, 2012, surgical

3

procedure. On September 11, 2012, Carols Sandoval-Herrera, MD assessed Sparkles Wages and discharged her home with instructions to follow up with him in approximately one week. On September 17, 2012, Sparkles Wages was seen at Access Community Health Network with complaints of pain and vaginal bleeding, and was discharged home with instructions to return if her symptoms persisted or worsened. On September 19, 2012, Sparkles Wages was seen by Carols Sandoval-Herrera, MD at Access Community Health Network for follow-up evaluation and treatment with continued complaints of pain and was counseled in healthy lifestyle and nutritional advice, and was discharged with instructions to follow up in four weeks. On October 22, 2012, Sparkles Wages returned to Access Community Health Network with continued complaints of pain and vaginal discharge, where she was given a screening for sexually transmitted diseases, diagnosed with bacterial vaginosis, given a prescription for Flagyl, and discharged with instructions to return in approximately one month. On November 21, 2012, Sparkles Wages returned to Access Community Health Network with continued complaints of pain and vaginal discharge and was discharged home with instructions to undergo an ultrasound. On December 3, 2012, Sparkles Wages was seen at Mt. Sinai Hospital where she underwent a pelvic transabdominal and transvaginal ultrasound, and was diagnosed with an enlarged uterus. On December 15, 2012, Sparkles Wages presented to the Mercy Hospital emergency department with severe pain in her abdomen, legs, foul smelling vaginal discharge, vaginal bleeding, and constipation. During that visit, on pelvic exam, a vaginal cervical cap foreign body used during the September 10, 2012, surgical procedure was visualized. On December 17, 2012, Sparkles Wages returned to Mercy Hospital emergency department where the retained foreign body, Cooper Surgical cervical cap used in the September 10, 2012, surgery, was removed successfully. On December 17, 2012, at Mercy Hospital, Sparkles Wages was diagnosed with cervicitis/vaginitis and was discharged with antibiotics. From December 17, 2012- present, Sparkles Wages has been treated with post-operative complications and infections, as a result of the retained surgical cap. Sparkles Wages began treating at Northwestern Memorial Hospital and its physicians and underwent two surgical procedures in 2014 as a result of the damages she suffered from the retained surgical cap.

It was a breach in the standard of care for the agents and employees of Mt. Sinai Hospital, including, but not limited to, Dr. Sandoval-Herrera to immediately perform a laparoscopic myomectomy with chromotubation to treat a fibroid without attempting less invasive measures first. For instance, Dr. Sandoval-Herrera failed to consider or attempt medical management or less invasive procedures, including, but not limited to, nonsteroidal anti-inflammatory drugs (NSAIDs), like Motrin. If that isn't effective, another option is a class of drugs that blocks the ovaries' production of estrogen and other hormones; medications to help dissolve or eliminate the fibroid, Uterine artery embolization (UAE), also known as uterine fibroid embolization (UFE); and Hysteroscopy. Given the size and location of the fibroid, Dr. Sandoval-Herrera also had a duty to consider leaving the fibroid alone without

4

any intervention. It was a breach in the standard of care to perform a laparoscopic myomectomy with chromotubation without exhausting less invasive means in a young woman who was still capable of child bearing and had expressed an interest in having more children.

Mt. Sinai Hospital, by and through its agents, Dr. Carlos Sandoval-Herrera, Shumal Malepati, MD, assistant; Elizabeth E. Reynoso, RN; Ninfa H. Osunero, RN; Jason Allawan, certified surgical tech; and Ahmed Mahammed, MS3; medical student, failed to properly inspect that all surgical equipment was removed from Sparkles Wages' body and perform an equipment count and check; failed to timely and properly recognize that part of the surgical tool/equipment was left inside of Sparkles Wages' body; failed to timely recognize that a piece of the Cooper Surgical KOH Cup, model number KCS-85, 3.5 cm was left inside Sparkles Wages' body; failed to properly perform surgery; failed to inspect the Cooper Surgical KOH Cup, model number KCS-85, 3.5 cm after it was removed from Sparkles Wages to ensure it was intact; failed to properly and timely diagnose Sparkles Wages' symptoms and complaints were caused by the Cooper Surgical cervical cap or surgical tool part left inside her body; failed to perform appropriate diagnostic tests to determine the cause of Sparkles Wages' symptoms and complaints; failed to timely treat Sparkles Wages' post-surgical complications and symptoms; failed to remove the Cooper Surgical cervical cap or surgical tool part left inside sparkles wages' body; and failed to properly utilize the Cooper Surgical KOH Cup during surgery.

Mt. Sinai Hospital, by and through its agents, including, but not limited to, Dr. Carlos Sandoval-Herrera, Shumal Malepati, MD, assistant; Elizabeth E. Reynoso, RN; Ninfa H. Osunero, RN; Jason Allawan, certified surgical tech; and Ahmed Mahammed, MS3; medical student, failed to inspect equipment utilized during operative procedure and after it was removed from the vagina. They also failed to perform correct operative instrument counts in and after surgery.

Given the size of the surgical cup, Mt. Sinai Hospital, by and through its employees and/or agents, Dr. Carlos Sandoval-Herrera, Shumal Malepati, MD, assistant; Elizabeth E. Reynoso, RN; Ninfa H. Osunero, RN; Jason Allawan, certified surgical tech; and Ahmed Mahammed, MS3; medical student, should have recognized that it was missing from the Cooper Surgical tool. His failure to recognize that the surgical cap was left inside of Sparkles Wages was a breach in the standard of care. And, in the post-operative visit which occurred in December of 2012, Mt. Sinai Hospital, by and through its employees and/or agents, were negligent in failing to recognize and diagnose that Sparkles Wages' post-operative complaints and symptoms were as a result of a retained surgical cap.

And, in the several post-operative visits which occurred from September of 2012-December of 2012, Dr. Sandoval-Herrera and his colleagues were negligent in failing to

5

recognize that Sparkles Wages' post-operative complaints and symptoms were as a result of a retained surgical cap.

These breaches in the standard of care by Mt. Sinai Hospital, by and through its employees and/or agents, including, but not limited to, Dr. Carlos Sandoval-Herrera, Shumal Malepati, MD, assistant; Elizabeth E. Reynoso, RN; Ninfa H. Osunero, RN; Jason Allawan, certified surgical tech; and Ahmed Mahammed, MS3; medical student, were a proximate cause of Ms. Wages' permanent injuries and damages, including, but not limited to, post-operative infections, symptoms, complications, pain and suffering, loss of a normal life and subsequent surgeries resulting in her inability to have children.

I reserve my right as a consultant to modify or expand these opinions, as additional information is made known.

Sincerely



6