| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| US Department of Health and Human Services, Office of the General Counsel, 330 C Street, SW, Attn: Claims, Switzer Building, Suite 2600, Washington, DC 20201 | Sparkles Wages, 4515 S. Michigan Ave, Apt C, Chicago, IL 60653; Law Offices of Stephanie K. Nathanson, 70 W. Madison St., Suite 3960, Chicago, IL 60602 ATTORNEYS: MICHAEL T. PETERSON / STEPHANIE NATHANSON |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|
| ☐ MILITARY  ☒ CIVILIAN | [redacted] | Single | December 15    2012 | |

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)

See Attached.

9. **PROPERTY DAMAGE**

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

None

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

N/A

10. **PERSONAL INJURY/WRONGFUL DEATH**

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

See Attached.

11. **WITNESSES**

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| Shumal Malepati, MD | Mount Sinai Hospital Medical Center of Chicago |
| Elizabeth Reynoso, RN | Mount Sinai Hospital Medical Center of Chicago |
| Jason Allawan, technician | Mount Sinai Hospital Medical Center of Chicago |

12. (See instructions on reverse).  **AMOUNT OF CLAIM (in dollars)**

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
|---|---|---|---|
| None | $15,000,000.00 | None | $15,000,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| [signature] | 312-263-9090 | 12/13/14 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable

95-109

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

EXHIBIT 1

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident insurance? ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number. ☐ No

N/A

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible? ☐ Yes   ☐ No   17. If deductible, state amount.

N/A

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts.)

N/A

19. Do you carry public liability and property damage insurance? ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code). ☐ No

N/A

## INSTRUCTIONS

Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.

#### Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
  A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute this form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC  20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

STANDARD FORM 95 REV. (2/2007) **BACK**

8.    This claim is based on the alleged medical malpractice of Dr. Carol Sandoval-Herrera and Access Community Health Network as employees/agents of the Federal Government, and non-Federal entities Mount Sinai Hospital Medical Center of Chicago, Sinai Health System, and The Mount Sinai Community Foundation, in their medical treatment of the plaintiff, Sparkles Wages.

On September 4, 2012, plaintiff Sparkles Wages underwent a MRI with and without contrast of her pelvis at Mount Sinai Hospital due to a clinical history of fibroids. A 5.5 cm by 5.4 cm by 9.4 cm myometrial mass was visualized arising from the posterior wall of her uterus on the aforesaid MRI which was consistent with an intra myometrial uterine fibroid. On September 10, 2012, plaintiff Sparkles Wages underwent a hand-assisted laparoscopic myomectomy, laparoscopic lysis adhesions, and chromotubation procedure at Mount Sinai Hospital Medical Center Of Chicago and performed by Dr. Carlos Sandoval-Herrera. The aforesaid procedure was performed utilizing a Cooper Surgical KOH Cup, model number KCS-85, 3.5 cm.

On September 11, 2012, Carols Sandoval-Herrera, MD assessed Sparkles Wages at Mount Sinai Hospital Medical Center Of Chicago and discharged her home with instructions to follow up with him in approximately one week. On September 17, 2012, plaintiff Sparkles Wages was seen at Access Community Health Network with complaints of pain and vaginal bleeding, and was discharged home with instructions to return if her symptoms persisted or worsened. On September 19, 2012, plaintiff Sparkles Wages was seen by Carlos Sandoval-Herrrera, M.D. at Access Community Health Network for follow-up evaluation and treatment with continued complaints of pain and was counseled in healthy lifestyle and nutritional advice,

and was discharged with instructions to follow up in four weeks. On October 22, 2012, plaintiff Sparkles Wages returned to Access Community Health Network with continued complaints of pain and vaginal discharge, where she was given a screening for sexually transmitted diseases, diagnosed with bacterial vaginosis, given a prescription for Flagyl, and discharged with instructions to return in approximately one month. On November 21, 2012, plaintiff Sparkles Wages returned to Access Community Health Network with continued complaints of pain and vaginal discharge and was discharged home with instructions to undergo an ultrasound. On December 3, 2012, plaintiff Sparkles Wages was seen at Mount Sinai Hospital Medical Center Of Chicago where she underwent a pelvic transabdominal and transvaginal ultrasound, and was diagnosed with an enlarged uterus.

On December 15, 2012, plaintiff Sparkles Wages presented to the Mercy Hospital emergency department in Chicago with severe pain in her abdomen, legs, foul smelling vaginal discharge, vaginal bleeding, and constipation. On December 15, 2012, at Mercy Hospital emergency department, a vaginal cervical cap foreign body used during the plaintiff's September 10, 2012, surgical procedure was visualized on a pelvic exam. On December 17, 2012, the plaintiff returned to Mercy Hospital emergency department where the retained foreign body, Cooper Surgical cervical cap used in the September 10, 2012, surgery was removed successfully. On December 17, 2012, Sparkles Wages was diagnosed at Mercy Hospital with cervicitis/vaginitis and was discharged with antibiotics. On December 28, 2012, Sparkles Wages was seen at a Mercy Hospital Clinic with complaints of pain, itching, and vaginal discharge, where she was diagnosed with a vaginal infection and was discharged with antibiotics. On March 17, 2013, Sparkles Wages was seen at Northwestern Memorial Hospital emergency

department with complaints of severe and increasing abdominal pain, cramping, vaginal spotting, and burning sensation inside her vagina.

The plaintiff alleges that the defendants, including Dr. Carlos Sandoval-Herrera and Access Community Health Network, negligently performed the hand-assisted laparoscopic myomectomy, laparoscopic lysis adhesions, and chromotubation procedure, negligently left instrumentation inside of Sparkles Wages at the completion of the procedure, negligently discharged Sparkles Wages from Mt. Sinai and Access Community Health Network, and negligently treated Sparkles Wages and her conditions post-operatively. See also, attached plaintiff's underlying lawsuit for further facts/allegations regarding this claim.

10.  Sparkles Wages has suffered severe complications and injuries as a direct and proximate result of the negligence of Dr. Carlos Sandoval Herrera and Access Community Health Network. Those injuries include severe pain and suffering as a result of the cramping, vaginal discharge, vaginal bleeding, and infection present in her pelvic area. She has been hospitalized on numerous occasions. She was diagnosed with Adenomyosis and was forced to terminate a pregnancy due to her inability to carry the baby to term. She ultimately was forced to undergo a hysterectomy, precluding her from ever bearing another child. She has had further complications with her intestines as a result of the trauma to her pelvic region, and may be forced to undergo additional surgeries.

11.  Additional witnesses include those physicians, nurses, and staff rendering Ms. Wages medical treatment at Mount Sinai, Mercy Hospital, Northwestern Memorial Hospital, and Access Community Health Network, including:

Dr. Scott Moses, Northwestern Memorial Hospital

Dr. Christopher Shinneman, MD, Mercy Hospital

Dr. Alfreda Hampton, MD-OBGY, Mercy Hospital

Dr. Vasilios Bournas, DO, Mercy Hospital

Dr. Melissa Millewich, MD, Mercy Hospital